IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-564

| | |
|---|---|
| WILLIAM D. POPE, SR., <br><br> Plaintiff, <br><br> v. <br><br> ABF FREIGHT SYSTEM, INC., <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on the Motion to Dismiss (Doc. No. 10) filed by Defendant ABF Freight System, Inc. ("ABF"). Plaintiff William D. Pope, Sr., ("Pope") has responded, and Defendant has filed a reply. This matter is now ripe for adjudication.

For the following reasons, Defendant's Motion is granted in part, denied in part.

## I. BACKGROUND

### A. Pope's Employment with ABF

According to the Complaint, Pope is a black citizen and resident of Caldwell County, Lenoir, North Carolina. ABF is a major transportation company that operates in North America to provide short-term and long-term truck hauls. Local Union #391, International Brotherhood of Teamsters ("the Local Union") is the sole and exclusive representative of ABF's employees who are members of the Local Union.

ABF and the Local Union entered into the ABF National Master Freight Agreement and Carolina Freight Council Supplemental Agreements ("the Agreement") on or about April 1, 2013. The Agreement allegedly states that all ABF employees become Union members "on and after the thirty-first (31st) calendar day following the beginning of their employment." The

1

Agreement further states that employees in their probationary period "may be terminated without further recourse; provided, however, that the Employer may not terminate the employee for the purpose of 'evading' the Agreement or discriminating against Union members." The Agreement was in effect throughout the relevant time period.

Pope initially worked as a part-time employee at ABF's Hickory terminal. On or about May 9, 2016, Pope became employed as a "part-time City Driver" for ABF out of the Kernersville terminal. He was considered a "casual driver" with no seniority, and he was initially placed in a 30-day probationary period. On or about June 12, 2016, Pope became employed full-time and was told that he was on a second 30-day probationary period. Pope enrolled in Local Union membership on his thirty-first day of employment and executed a card authorizing the Local Union to represent him as his collective bargaining agent with ABF.

On or about June 24, 2016, Pope asked "Matt," a dispatcher, about his route options now that he was a full-time driver.[1] Matt allegedly became "highly agitated" at this question, cursed at Pope, and "barked" at Pope that he "has no options." Pope claims that he thereafter "became a target for management." Pope called the Local Union for assistance. A Union steward informed both Matt the dispatcher and Mark Adams ("Adams"), who was an Operations Supervisor in Kernersville, that Pope was a Union member and was planning to become a line-haul driver once he reached his 30-days as a full-time driver. On July 1, 2016, Adams told Pope that he was doing a "great job," and he informed Pope that he had reprimanded Matt for how he had treated Pope.

---

[1] The Complaint states that this conversation occurred on June 24, 2017, but it is clear from the surrounding context and the fact that Pope first filed this action in state court on June 16, 2017, that this date is a typographical error.

On July 6, 2016, Pope went on a city delivery with another employee. While lifting "heavy items" during that delivery, Pope injured his back. Pope claims that he had to continue working in spite of the injury, but that he immediately reported the injury to the other employee and to the dispatcher. Upon returning to the terminal, Pope informed Adams of the injury. Adams then typed up the paperwork that Pope needed to go to the doctor. The doctor "concluded that [Pope] had to be placed on light duty due to his disability," and Pope claimed to be in "substantial pain."

On or about July 6, 2016, Adams received the doctor's conclusions, said "Well, they're not really back doctors anyway," and immediately terminated Pope's employment. When Pope requested a Union steward to be present, Adams became "belligerent" and "hostile." Adams did find a Union steward, however, and he told the steward that Pope "had customer complaints against him and that it was his right to fire [Pope] within 30 days."

### B. Procedural Background

On August 5, 2016, Pope filed a charge of discrimination with the U.S. EEOC, claiming that he had been discriminated against because of his race, disability, and age, and in retaliation for complaining about ABF's practices in violation of Title VII and the ADA. Pope also filed a complaint with NCDOL's Employment Discrimination Bureau on the same grounds. Both the EEOC and the NCDOL declined to investigate Pope's claims but issued Pope right to sue letters.

Pope then filed a Complaint in the Superior Court of North Carolina, Mecklenburg County. The matter was removed to this Court on September 21, 2017. In his Complaint, Pope alleges that he did not commit any wrongdoing to merit his termination. Rather, Pope claims that Adams terminated him because "Adams didn't want [Pope] to be able to bid on the longer drives because he had personal friends that he wanted to send on the easier longer trips." Pope

also alleges that the termination was "discriminatory and in retaliation for and directly related to [Pope's] Union activities, the injury he suffered at work and/or the filing of a worker's compensation claim." And finally, Pope alleges that the termination was motivated by his race. In support of this allegation, Pope claims that a white employee was also injured while on duty around the same time but was placed on light duty and received his full pay and support from the Union. Additionally, other black employees allegedly warned Pope that Adams "doesn't hire Blacks," would make "an example" of Pope, and "treated White employees better."

Pope's Complaint asserted four causes of action against ABF, Adams, and the Local Union: (1) that his termination was in violation of the North Carolina Retaliatory Discrimination Act (REDA), N.C. Gen. Stats. §§ 95-240, *et seq*.; (2) that he was discriminated against and retaliated against on the basis of his race in violation of § 1981 and Title VII; (3) that he was denied a reasonable accommodation and was retaliated against in violation of the ADA; and (4) that Defendants breached a valid contract (the Agreement).

Pope voluntarily dismissed with prejudice all claims with respect to Adams and the Local Union. Accordingly, ABF is the only remaining defendant. ABF has moved to dismiss part of count 2, count 3, and count 4 of Pope's Complaint.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable

conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the complaint or counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. ANALYSIS

#### A. Title VII and Section 1981 Retaliation Claims

Pope alleges both racial discrimination and retaliation in violation of Title VII and Section 1981. ABF has moved to dismiss only the retaliation claim.

Title VII prohibits discrimination against an employee because, in relevant part, he "has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. A prima facie case of retaliation under Title VII and Section 1981 requires a showing: "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citations omitted). "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements." *Id.*

Pope argues in his memorandum in opposition to the motion to dismiss that he engaged in protected activity on three occasions: (1) when he asked for route options and was "barked" at by a dispatcher, (2) when he called the Local Union for assistance after this occurred, and (3) when he was discouraged by Adams from turning to the Union when he encountered problems. As alleged in the Complaint, none of these occurrences rise to the level of protected activity under Title VII or Section 1981. Pope does not allege that these actions in any way opposed

5

discriminatory conduct that violated Title VII or Section 1981, nor does he allege that these actions charged discriminatory conduct or in any way amount to participation in an investigation into discriminatory conduct. Rather, he merely follows these factual claims that are unrelated to discriminatory conduct on the basis of race with threadbare recitals of the elements of a cause of action that cannot support a plausible claim for relief.

Thus, Pope's Title VII and Section 1981 retaliation claims must be dismissed.

### B. ADA Claims

Pope also alleges both disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"). ABF has moved to dismiss both claims.

First, Pope alleges that ABF violated the ADA by failing to accommodate his disability. The ADA prohibits covered employers from discriminating against an otherwise qualified employee because of a disability. 42 U.S.C. § 12112(a). Establishing a prima facie case for failure to accommodate under the ADA requires a plaintiff to show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2000) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2nd Cir. 1999)).

Generally, an individual can show that he has a qualifying "disability" under the ADA by showing that he has: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). However, for a failure to accommodate claim, an individual must show that he has a disability within the "actual disability" prong or the

6

"record of" prong, as an employer cannot be liable for failing to accommodate an employee who is not actually limited by an impairment or has a record of such impairment. 29 C.F.R. § 1630.2(o)(4).

Under the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 2552 (codified in scattered sections of Title 42 of the United States Code), Congress explicitly broadened the definition of disability under the ADA. However, an individual alleging that he has a disability must still show that he has substantial limitations in one or more major life activities, such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Further, "short-term impairments qualify as disabilities only if they are 'sufficiently severe.'" *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 330 (4th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app)).

Here, Pope has merely alleged that the injury he suffered "qualifies as a disability," that he was in "substantial pain" one day after the incident, and that a doctor concluded he needed to be placed on "light duty." Pope does not allege any specific facts about the nature of the injury, the expected duration of his impairment, or how it limited his major life activities beyond stating that he needed to be placed on "light work." Nor does he allege any history of injury or impairment that has substantially limited his abilities in the past. Accordingly, the Court finds that Pope's allegations are conclusory in nature and do not rise to the level of plausibility. Thus, he has not alleged sufficient facts to show that his injury created an "actual disability" or a "record of" disability under the ADA, and his failure to accommodate claim must be dismissed.

Second, Pope alleges that ABF retaliated against him in violation of the ADA. The ADA's retaliation provision states, in relevant part, "[n]o person shall discriminate against any

7

individual because such individual has opposed any act or practice made unlawful under this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A prima facie case for retaliation requires a plaintiff to prove "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; (3) that there was a causal link between the two events." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2011). "This basis of recovery does not require that the claimant be disabled." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001).

Here, Pope claims two actions that counted as a "protected activity" for purposes of the ADA. First, Pope states in the Complaint that ABF fired him in retaliation "for his complaints of disability discrimination." This allegation, however, is not supported by any factual assertions. Pope nowhere alleges that he complained about any discrimination based on his injury prior to his termination. Second, Pope claims that his "request for reasonable accommodations" is a protected activity. Specifically, Pope alleges that his doctor concluded that he needed to be placed on "light duty" and that Adams saw this conclusion from the doctor before terminating Pope's employment.

Submitting a request for a reasonable accommodation is clearly protected activity under the ADA. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015). A "reasonable accommodation" includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions." 29 C.F.R. § 1630.2(o)(1). While the reasonableness of an accommodation is ultimately a question of fact for a jury, *Bordonaro v. Johnston Cty. Bd. of Educ.*, 938 F. Supp. 2d

8

573, 579 (E.D.N.C. 2013), a request for a transition to "light duty" sufficiently fits within this definition as a modification to Pope's work environment.[2]

Defendant argues, however, that Pope does not allege that he actually requested an accommodation. Pope alleges that he went to the doctor, was told that he needed to be placed on "light duty," and presented the doctor's conclusion to Adams. Adams responded by saying, "Well, they're not really back doctors anyway." Adams then "immediately" terminated Pope. These allegations mirror those at issue in *Sillah v. Burwell*, 244 F. Supp. 3d 499 (D. Md. 2017). In *Sillah*, the plaintiff informed her supervisor of "her doctor's instructions and limitations," the supervisor treated the limitations "with derision," and plaintiff was terminated. *Id.* at 510. The court found that the plaintiff had adequately alleged an ADA retaliation claim. *Id.* This Court finds the reasoning in *Sillah* persuasive and finds that in this case the interaction between Adams and Pope sufficiently alleges a request by Pope to be placed on light duty as an accommodation for his injury.

The parties agree that the second element of a retaliation claim, that the employer took an adverse employment action against the plaintiff, is met here. The Complaint alleges that ABF terminated his employment immediately after he presented the doctor's conclusion to Adams.

ABF argues, however, that Pope has not sufficiently alleged facts supporting the third element: a causal link between engaging in the protected activity and his termination. The ADA requires proof of "but for" causation. *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235 (4th Cir. 2016). Factual support for causation can be shown through temporal proximity

---

[2] The Second and Third Circuits both also require a plaintiff to show that he possessed a "good faith" belief that he was entitled to request the reasonable accommodation. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177 (3d Cir. 2010); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224 (2d Cir. 2000). However, this Court has found no precedent in this Circuit applying this standard to ADA retaliation claims and accordingly declines to require proof of this additional element.

between the protected activity and the adverse employment action. *See Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.*, 956 F. Supp. 2d 695, 705 (E.D. Va. 2013) (finding four days between the alleged protected activity and the adverse action to be close enough to allege facts in support of causation); *Bordonaro*, 938 F. Supp. 2d at 580 (finding a three-week period between protected activity and firing to be sufficient). Here, Pope alleges that Adams terminated him "immediately" after receiving the doctor's conclusions. Thus, Pope has sufficiently alleged an extremely close temporal proximity that could support a finding of causation.

ABF argues that Pope cannot show but-for causation because he has alleged several different motives for the firing, including union activities, race, injury, workers' compensation requests, and his request for a reasonable accommodation. While proof of causation ultimately requires proof that Pope's protected activity was "more than *a* motivating factor" but was instead "*the only* motivating factor," *Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017) (emphasis in original), Pope may allege alternative theories of relief and still state a plausible claim at this stage of the litigation, *see* Fed. R. Civ. P. 8(a).

Thus, Pope has not alleged a plausible claim for relief for discrimination in violation of the ADA, but he has alleged a plausible claim of retaliation in violation of the ADA.

### C. Breach of Contract Claim

Finally, Pope alleges that ABF breached the terms of the Agreement and caused harm to Pope. ABF moves to dismiss this claim.

ABF argues that this breach of contract claim is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Under Section 301, a state-law claim is preempted if the resolution of the state-law claim "depends upon the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988). The parties

agree that the Agreement is a collective-bargaining agreement within the meaning of Section 301. However, Pope argues that his breach of contract claim is not preempted because resolution of his claim does not require interpretation of the Agreement.

In the Complaint, Pope alleges that the Agreement allows employees to be terminated "without further recourse" during their "probationary period," but that ABF may not terminate an employee in order to "evade" the Agreement or to discriminate against Union Members. Pope alleges that he had already completed one probationary period and was required to complete a second probationary period before being entitled to cross over and become a line-haul driver. Pope was terminated during the second probationary period.

It is clear from the Complaint that resolution of Pope's breach of contract claim requires a determination of whether Pope was still within the "probationary period" as defined in the Agreement when he was terminated and whether ABF acted to "evade" the Agreement. Interpretation of the Agreement would be necessary to resolve those questions. Thus, because Pope's state-law breach of contract claim is substantially dependent upon an analysis of the Agreement, they are preempted by Section 301 of the Labor Management Relations Act.

## IV. CONCLUSION

For the foregoing reasons, ABF's Motion to Dismiss (Doc. No. 10) is **GRANTED IN PART, DENIED IN PART**. The following claims are hereby **DISMISSED**:

1. Pope's claim for race discrimination in violation of § 1981 and Title VII;
2. Pope's claim for retaliation in violation of § 1981 and Title VII;
3. Pope's claim for disability discrimination in violation of the ADA; and
4. Pope's claim for breach of contract.

**SO ORDERED.**

Signed: July 24, 2018

*/s/ Graham C. Mullen*
Graham C. Mullen
United States District Judge